UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:19-CR-151-TAV-DCP |
| | ) | |
| ALIM TURNER, | ) | |
| USHERY M. STEWART, | ) | |
| RONALD J. TURNER, | ) | |
| KEDARIS T. GILMORE, | ) | |
| MAHLON T. PRATER, JR., | ) | |
| CAMARON A. BILLIPS, and | ) | |
| ANTOINETTE TURNER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on April 12, 2021 [Doc. 354]. The R&R addresses the following motions to suppress:[1] Defendant Ronald Turner's Motion to Suppress All Intercepted Communications in Which Ronald Turner is a Participant in the Communication (TT-2) [Doc. 186]; Defendant Alim Turner's First Motion to Suppress Fruits of Wiretaps (TT-1, TT-2, and TT-2/TT-3) [Doc. 188]; Defendant Ushery Stewart's Motion to Suppress—Title III[2] Wiretap on TT-2

---

[1]  These motions all involve three target telephone ("TT") wiretaps. Unless noted in the title of the motion, the specific target telephone wiretap(s) at issue noted in parentheses following the title as (TT-1), (TT-2), or (TT-2/TT-3).

[2]  Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(3).

[Doc. 189]; Defendant Ushery Stewart's Motion to Suppress—Title III Wiretap on TT-3 [Doc. 190]; Defendant Ronald Turner's Motion to Adopt Doc. 189 (TT-2) [Doc. 192]; Defendant Kedaris Gilmore's Motion to Adopt Codefendant Stewart Motion to Suppress Doc. 190 (TT-3) [Doc. 209]; and Defendant Mahlon Prater's Motion to Suppress all Intercepted Communications in Which defendant Prater is a Participant in the Communication (TT-1, TT-2, and TT-2/TT-3) [Doc. 212].[3]

After a hearing, Judge Poplin issued the R&R, recommending that the Court grant the motions to adopt, and that the defendants' motions to suppress be denied [Doc. 354]. Defendants Ronald Turner, Stewart, and Alim Turner have all filed objections to the R&R [Docs. 358, 359, 360], and Defendants Alim Turner, Antoinette Turner, Gilmore, Billips, and Prater have filed motions to adopt various portions of their co-defendants' objections [Docs. 361, 363, 364, 366, 368]. The government has filed a consolidated response [Doc. 371], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **DENY AS MOOT** Defendant Antoinette Turner and Defendant Billips's motions to adopt [Docs. 363, 366], **GRANT** the remaining

---

[3] The R&R also addressed Defendant Antoinette Turner's Motion to Adopt Co-Defendants' Motions 188, 189, 212 (TT-1, TT-2 and TT-2/TT-3) [Doc. 238] and Defendant Billips's belated motion to adopt the previously filed motions to suppress by Defendants Ronald Turner, Alim Turner, Stewart, and Prater (TT-1, TT-2, TT-2/TT-3) [Doc. 339]. However, those motions were later denied as moot, after both Defendant Antoinette Turner and Defendant Billips entered into plea agreements [Doc. 408].

2

defendants' motions to adopt [Docs. 361, 364, 368], **OVERRULE** defendants' objections [Docs. 358, 359, 360], and **ACCEPT IN PART**[4] the R&R [Doc. 354].

## I. Background

The Court presumes familiarity with the R&R's description of the background. Defendants did not file any specific objections as to the factual background set forth in the R&R [Doc. 354, pp. 3–23]. The Court, therefore, incorporates by reference the factual background established in the R&R.

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the suppression motions, the parties' underlying and supporting briefs, the defendants' objections, and the government's response to those objections, all in light of the applicable law.

## III. Analysis

### A. Motions to Adopt

Defendants Alim Turner, Antoinette Turner, Gilmore, Billips, and Prater have filed motions to adopt [Docs. 361, 363, 364, 366, 368] various portions of their co-defendants' objections [Docs. 358, 359, 360] to the R&R [Doc. 354]. First, the Court notes that, since

---

[4] The Court accepts all portions of the R&R, with the exception of the R&R's conclusion that weekend days should not be counted in calculating the delay in sealing the wiretap records [Doc. 354, pp. 46–47], an issue that the Court finds it unnecessary to decide in adopting the magistrate judge's ultimate conclusion that the government provided a satisfactory explanation for the delays in sealing the wiretap records.

3

filing their respective motions to adopt [Docs. 363, 366], both Defendant Antoinette Turner and Defendant Billips have entered into plea agreements in this case [Docs. 391, 395]. Accordingly, these defendants' motions to adopt co-defendants' objections to the R&R [Docs. 363, 366[ are **DENIED AS MOOT**.  However, as to the remaining defendants' motions to adopt, for good cause shown, these defendants' motions to adopt [Docs. 361, 364, 368] are **GRANTED**, and the Court has considered the objections, discussed in further detail below, as filed on behalf of all of the relevant defendants.

### B. TT-1

Of the three sets of objections filed, which other co-defendants have adopted, only Defendant Alim Turner's objections [Doc. 360] contain any reference to the R&R's analysis regarding whether evidence from the TT-1 wiretap should be suppressed.  In this document, Defendant Alim Turner states that he specifically objects to: (1) the R&R's finding that the "necessity" requirements were satisfied for the issuance of TT-1, TT-2, and TT-2/TT-3; and (2) the R&R's finding that all evidence seized by law enforcement should not be suppressed as fruit of the poisonous tree [*Id*. at 1].  Defendant then provides a brief summary of the arguments that he raised before Judge Poplin [*Id*. at 2] and a brief summary of the R&R's findings [*Id*. at 3].  Defendant's argument then states in full:

> Because wiretaps are so extraordinarily invasive, Congress intended the procedure to be used only when traditional investigative methods had been tried and failed.  *United States v. Giordano*, 416 U.S. 505, 515 (1974) ("These were not to be routinely employed as the initial step in the criminal investigation.  Rather, the applicant must state and the court must find the normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.").

4

> WHEREFORE, the Defendant respectfully moves this Honorable Court to enter an Order sustaining his Objection to the Report and Recommendation and to therefor Order that all evidence seized in this matter be suppressed as fruit of the poisonous tree.

[*Id*.].  The government contends that this objection is conclusory and offers no reasons or supporting analysis [Doc. 371, p. 3].

Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)).  "Objections disputing the correctness of the magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient."  *Stamtec, Inc. v. Anson*, 296 F. App'x 516, 519 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)).  An objection which accomplishes "nothing more than stat[ing] a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used" in the context here.  *Daniels v. Colvin*, 3:14-cv-546, 2016 WL 792416, at *1 (E.D. Tenn. Feb. 29, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)).  The Court may treat objections which amount to disagreements with the magistrate judge or which merely restate previous arguments as waived.  *Daniels*, 2016 WL 792416, at *1.

Defendant Alim Turner's objection to the R&R is simply too conclusory to constitute a proper objection.  From his filing, the Court can only determine that Defendant Alim Turner objects to the magistrate judge's ultimate holding that the affidavits in support of

5

the wiretaps met the necessity requirement of 18 U.S.C. § 2518(1)(c). However, Defendant Alim Turner points to no specific portion of the magistrate judge's thorough analysis of this issue that he contends was erroneous. Thus, Defendant Alim Turner's bare bones objection to the magistrate judge's ultimate conclusion is insufficient to constitute a proper objection, *see Daniels*, 2016 WL 792416, and therefore, Defendant Alim Turner's objection [Doc. 360] is **OVERRULED**.

### C.    TT-2 and TT-2/TT-3

#### 1.    Staleness

Defendant Ronald Turner objects to Judge Poplin's conclusion that the TT-2 wiretap was not based on stale evidence [Doc. 358]. He contends that Judge Poplin erred in finding that the affidavit supporting the TT-2 wiretap established a pattern of drug trafficking, and asserts that the evidence presented in the affidavit is indicative of isolated, unconnected incidents of drug sales [*Id*. at 4]. He argues that the other information in the affidavit merely established that Defendant Alim Turner had been involved in suspected drug activity six to seven months prior to the TT-2 wiretap application [*Id*.]. He further contends that the "sporadic" nature of communications with different individuals established that Defendant Alim Turner was more "nomadic" than "entrenched," and there is no allegation that Defendant Alim Turner was operating out of a secure base [*Id*. at 5].

Defendant Stewart objects to Judge Poplin's conclusion that neither the TT-2 nor TT-2/TT-3 wiretaps were based on stale evidence [Doc. 359, pp. 2–4]. He contends that the last substantive information supporting probable cause took place more than four

6

months prior to the application for the TT-2 wiretap, and information as old as seven months was relied upon [*Id*. at 2]. Defendant Stewart notes that Judge Poplin relied on numerous contacts between co-defendants as sufficient to support a finding of a likelihood that a crime was being furthered, but argues that, based on the pen register trap and trace used to capture the existence of calls and texts, there is no way to know the substance of the communications between co-defendants [*Id*. at 2–3]. Accordingly, he contends that these communications do not support an inference that the co-defendants must have been undertaking continuing criminal conduct, and therefore, should not be used to "freshen" otherwise stale information [*Id*. at 3]. Defendant Stewart states that the *Alfano*[5] decision, on which Judge Poplin relied, was published in 1988 and involved conduct in 1983 to 1984, but argues that the way we communicate today is nothing like it was during that time [*Id*. at 3–4]. As to the TT-2/TT-3 wiretap, Defendant Stewart contends that the same rationale applies and the R&R should have culled all of the information discovered as a result of the TT-2 wiretap before performing the same analysis on the TT-2/TT-3 wiretap application [*Id*. at 4].

The government responds that this objection is defeated because a drug trafficking conspiracy was the primary offense that the wiretaps sought to investigate, and allegations of ongoing criminal activity will generally defeat a claim of staleness [Doc. 371, p. 4]. The government points out that, in recorded phone calls, Defendant Alim Turner would use phrases like "business" and "investment to get ahead" and reference a desire to obtain more

---

[5] *United States v. Alfano*, 838 F.2d 158 (6th Cir. 1988).

drugs so he would not lose customers [*Id.*].  The government argues that the TT-2 affidavit also highlighted ongoing, escalating drug trafficking communications between Defendant Alim Turner and Defendant Stewart, including the sale of methamphetamine and acquisition of large quantities of drugs and firearms [*Id.* at 5].  The government contends that the toll analysis, when considered with the rest of the information contained in the TT-2 affidavit, demonstrates non-stale probable cause [*Id.*].

Similar to search warrants, a judge authorizing a wiretap must find "probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense[,]" such as drug trafficking.  18 U.S.C. § 2518(3)(a); *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988) (holding that the "basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III").  "[S]tale information cannot be used in a probable cause determination."  *United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009).  However, "[t]he staleness inquiry depends on the 'inherent nature of the crime.'"  *Id.* (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)).  In analyzing whether information is stale, the Court considers the following factors: (1) the character of the crime (chance encounter in the night or regenerating conspiracy?); (2) the criminal (nomadic or entrenched?); (3) the thing to be seized (perishable and easily transferable or of enduring utility to its holder?); and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).  *United States v. Young*, 847 F.3d 328, 347 (6th Cir. 2017) (quoting *Frenchette*, 583 F.3d at 378)).

8

Although the length of time from the events in an affidavit to the warrant or wiretap application is important, it is not controlling. *United States v. Bussell*, No. 3:10-cr-159, 2011 WL 7473444, at \*10 (E.D. Tenn. Dec. 16, 2011) (citing *Spikes*, 158 F.3d at 923). "Evidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (citing *United States v. Canan*, 48 F.3d 954, 958 (6th Cir. 1995) (holding that, though conduct described in the affidavit was four years old, evidence of the ongoing nature defeated claim of staleness)).

In reviewing the probable cause determination for a wiretap authorization, the Court must afford the issuing judge's probable cause finding considerable deference. *United States v. Dimora*, 836 F. Supp. 2d 534, 556 (N.D. Ohio 2011) (citing *United States v. Leon*, 468 U.S. 897, 967 (1984) (Stevens, J., concurring in part & dissenting in part)). The issuing judge's "determination on the question of probable cause will not be reversed if the record contains a 'substantial basis for his [or her] probable cause findings.'" *Alfano*, 838 F.2d at 162 (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)).

As to TT-2, Judge Poplin relied on four pieces of evidence to conclude that the affidavit in support of the wiretap contained evidence of ongoing criminal activity, such that the evidence was not stale: (1) information from a confidential source identifying Defendant Alim Turner as his or her source of supply for marijuana and other drugs, including crack cocaine, and that Defendant Alim Turner received pounds of marijuana via the mail system; (2) text messages retrieved from Defendant Alim Turner's phone from November and December of 2018, discussing drug supplies and sales, and the acquisition

9

of firearms; (3) text messages on January 31, 2019, from Defendant Alim Turner arranging the sale of drugs to an unknown person; and (4) approximately 750 text messages and over 1000 calls between Defendant Alim Turner and Defendant Stewart between November 2018 and June 2019 [Doc. 354, pp. 29–30].

The Court will first address Defendant Stewart's argument that *Alfano* is no longer good law and the evidence of the number of phone calls and text messages between himself and Defendant Alim Turner was insufficient to establish an ongoing conspiracy [*See* Doc. 359, pp. 2–4]. In *Alfano*, the Sixth Circuit addressed a challenge to whether an application for a wiretap established probable cause. 838 F.2d at 160. The Sixth Circuit ultimately found that a recurring pattern of multiple connections among phone calls, between and among recognized members of the conspiracy, and connected to the key defendant in the case, combined with the use of common counter-surveillance techniques and some discussions involving a drug-related code was sufficient to show a "fair probability" that interception of further calls would reveal evidence of a crime. *Id.* at 162.

Defendant Stewart asserts that *Alfano*'s reliance on the number of phone calls amongst the members of the conspiracy, in the 1980s, is no longer an applicable consideration for communications occurring in 2018 and 2019 [Doc. 359, pp. 3–4]. Defendant Stewart makes a blanket assertion that *Alfano* should not apply because the way we communicate today is nothing like it was in the 1980s [*Id.*]. While the Court certainly acknowledges that communicates have changed substantially over the past several decades, the Court does not agree that this fact supports a finding that the phone toll records in this

10

case could not support a finding of a fair probability that interception of further calls would reveal evidence of a crime.

Standing alone, the approximately 750 text messages between Defendant Alim Turner and Defendant Stewart over the course of 6 to 7 months would likely be insufficient to establish a fair probability that additional evidence of criminal activity would be uncovered through a wiretap. Indeed, as Defendant Stewart himself references in his objections, text messaging has become a more popular form of communication, and individuals may message each other on and off all day, sending "dozens of separate text messages, often within seconds of one another" [*Id*. at 4]. However, the Court finds particularly compelling the over 1000 phone calls exchanged between Defendant Alim Turner and Defendant Stewart during this 6 to 7-month period. While phone calls may be more frequent now, with the popularity of cellular phones, such a volume of phone calls between two participants is uncommon. Particularly in light of the TT-2 affiant's statement that he knows, from his experience, that drug traffickers are often hesitant to discuss quantities, prices, and arrange transactions via text messages and prefer to call or meet in person [Doc. 190-2, p. 16], the Court finds that the volume of phone calls between Defendant Alim Turner, who, again, was alleged to be the leader of this drug trafficking organization [*Id*. at 8], and Defendant Stewart establishes a fair probability that a wiretap of TT-2 would produce further evidence of criminal activity. Accordingly, the Court does not find that Judge Poplin erred in considering the phone toll records or relying on *Alfano* in determining that the TT-2 application provided evidence of ongoing criminal activity,

11

and therefore, was not impermissibly based on stale evidence, and Defendant Stewart's objections [Doc. 359] to the TT-2 wiretap on this ground are **OVERRULED**.

The Court now turns to Defendant Ronald Turner's arguments that Judge Poplin erred in finding that the affidavit in support of the TT-2 application established evidence of ongoing criminal activity [Doc. 359, pp. 4–5]. Even assuming, without deciding, that Defendant Ronald Turner is correct in his assertions that the evidence submitted in support of the TT-2 application shows that the communications were sporadic, Defendant Alim Turner was more nomadic than entrenched, and Defendant Alim Turner was not operating out of a secure base, it is clear that evidence may be deemed non-stale based solely upon the first factor to be considered—the character of the crime—and specifically, whether the character of the crime was an ongoing criminal activity. *See Spikes*, 158 F.3d at 924 (denying a motion to suppress on staleness grounds primarily based on a finding that the evidence established an ongoing drug trafficking operation); *Greene*, 250 F.3d at 481 ("Evidence of ongoing criminal activity will generally defeat a claim of staleness."). The Court agrees with Judge Poplin's conclusion that, considered together, the evidence in the TT-2 affidavit indicated that Defendant Alim Turner was engaged in a pattern of drug trafficking and was associating with Defendant Stewart in that activity. Considering the level of deference due to the judge issuing the wiretap warrant, the Court does not find that there was no non-stale evidence on which the issuing judge could have based her probable cause determination. Accordingly, Defendant Ronald Turner's objections [Doc. 358] on this ground are **OVERRULED**.

12

As to the TT-2/TT-3 application, Defendant Stewart merely contends that, based on his arguments regarding the TT-2 application, the TT-2/TT-3 application should be culled of all information that resulted from the TT-2 wiretap and then analyzed [Doc. 359, p. 4]. However, because the Court has found that the magistrate judge correctly concluded that the TT-2 affidavit was supported by non-stale evidence that established probable cause, the Court finds no reason to analyze whether the TT-2/TT-3 affidavit was sufficient absent information obtained through the initial TT-2 wiretap. Accordingly, Defendant Stewart's objection to the TT-2/TT-3 wiretap on this ground [Doc. 359] is **OVERRULED**.

## 2. Necessity Requirement

Defendant Stewart also objects to Judge Poplin's conclusion that the TT-2 and TT-2/TT-3 affidavits met the necessity requirement for wiretaps [Doc. 359, pp. 5–6]. He argues that Judge Poplin relied on the affiant's generalized and uncorroborated assertions regarding alternative investigative techniques, but asserts that it was error to rely on these boilerplate and generalized reasons for a wiretap [*Id.*]. Defendant Stewart asserts that, once the affidavits are culled of this boilerplate language, Judge Poplin should have recommended that the affidavits were insufficient with respect to the necessity requirement [*Id.* at 6].

The government responds that Judge Poplin correctly credited the affidavits' representations regarding how the use of some traditional investigative techniques risked exposing the investigation and/or posed a danger to law enforcement or the public [Doc. 371, p. 6].

13

"In order to conduct electronic surveillance using a wiretap, federal law enforcement officials must secure authorization by making an application containing 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" *Young*, 847 F.3d at 343 (quoting 18 U.S.C. § 2518(1)(c)). "This provision, commonly referred to as the 'needs statement provision,' was designed to [e]nsure that wiretapping is not resorted to in a situation where traditional investigative techniques 'would suffice to expose the crime.'" *Id*. (quoting *Alfano*, 838 F.2d at 163).

While the necessity requirement protects against the use of a wiretap as the initial step in an investigation, the government need not "prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163. The Sixth Circuit has stated that "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Id*. at 163–64 (quoting *Lambert*, 771 F.2d at 91). Moreover, "[w]hile the prior experience of investigative officers" is relevant in determining whether other investigative techniques are unlikely to succeed, "a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be . . . inadequate compliance with the statute." *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007) (quoting *United States v. Landmesser*, 553 F.2d 17, 20, (6th Cir. 1977)).

14

The Court has fully reviewed the TT-2 and TT-2/TT-3 affidavits and is in agreement with Judge Poplin's determination that both affidavits met the necessity requirement. The Court finds that Defendant Stewart's claim that these affidavits relied on "boilerplate" to establish that other investigative techniques would not be successful is belied by the record before the Court.

As to TT-2, the affidavit specifically discussed other surveillance methods, including vehicle trackers, geolocation information, physical surveillance and pole cameras, but noted that the drug trafficking organization was using a residence located at 2828 East Fifth Avenue and that Defendant Alim Turner frequently stayed at his girlfriend's apartment in Cassell Ridge Apartments located at 1205 Cassell Valley Way, Apt. 303, and both of these locations were problematic for surveillance [Doc. 190-2 ¶ 41]. Specifically, the affiant stated that the "relationships and intimate knowledge of neighbors" in these settings would make surveillance difficult as "[u]nfamiliar vehicles or unusual traffic patterns would be obvious" to the drug trafficking organization and other neighbors [*Id*.]. Nevertheless, the affiant detailed some attempts law enforcement had made to conduct surveillance of these locations, and the limitations they had encountered [*Id*. ¶ 42]. The affiant discussed the use of vehicle tracking devices, but noted that law enforcement had not specifically identified all of Defendant Alim Turner's vehicles at that time, and, given the locations involved and the possibility of surveillance cameras, any attempt to install a tracking device could be detected by the drug trafficking organization [*Id*. ¶ 43]. Further, the affiant stated that law enforcement had used a pole camera in the vicinity of

15

one of the houses used by the drug trafficking organization, and was able to observe cars in the area, including license plates, and was sometimes able to identify a person, but could not obtain specific enough information to dismantle the drug trafficking organization's operations and noted that experienced gang members and criminals can sometimes identify pole cameras and avoid the cameras' line of sight [*Id*. ¶ 45].

The affiant also noted that law enforcement had used a confidential informant in the course of this investigation, but the informant was no longer able to purchase narcotics from the drug trafficking organization [*Id*. ¶ 46]. The affiant noted that use of another confidential informant would be difficult because the drug trafficking organization was run by individuals that had known each other and each other's families for many years [*Id*.]. For the same reason, the affiant stated that use of undercover agents would not be successful [*Id*. ¶ 48]. The affiant also noted that law enforcement had been able to obtain the confidential informant's consent to monitor conversations between the informant and Defendant Alim Turner, but the confidential informant was no longer able to make controlled calls or texts to Defendant Alim Turner because they were no longer friends [*Id*. ¶ 49]. The affiant also stated that interviews of the subjects and associates would be unlikely to elicit useful information, because the individuals contacted would alert their co-conspirators, resulting in the destruction of evidence [*Id*. ¶ 47].

The affiant also discussed the possibility of trash pulls, but noted that Defendant Alim Turner frequently stayed at his girlfriend's apartment, and the trash from the apartments is collected at a communal waste dumpster and not individually separated

16

[*Id.* ¶ 50]. Further, the affiant stated that it was unlikely any trash would reveal the scope of the overall organization or provide information regarding the drug suppliers or distributors [*Id.*]. As to the potential use of mail covers, the affiant stated that, while there was some evidence that Defendant Alim Turner was using the mail system to receive shipments of marijuana, based on present information, the drug trafficking organization primarily transported drugs and money in vehicles, therefore, the use of mail covers was unlikely to be helpful [*Id.* ¶ 51]. Additionally, the affiant discussed the potential use of grand jury subpoenas, subject interviews, search warrants, phone toll records, and financial investigations, and specifically discussed how law enforcement had attempted to use such techniques and/or why such techniques would be unsuccessful in light of the specific nature or facts of this case [*Id.* ¶¶ 52–56].

The TT-2/TT-3 affidavit largely repeated this information but added new information where relevant [*See* Doc. 190-1 ¶¶ 45–61]. For example, regarding surveillance efforts, the TT-2/TT-3 affidavit added that, on June 29, 2019, agents conducting surveillance attempted to follow Defendant Alim Turner, Defendant Stewart, and another individual, who were in a vehicle together, but the vehicle's occupants employed a number of counter-surveillance measures that impeded such surveillance efforts [*Id.* ¶ 46]. Additionally, as to the use of vehicle trackers, the TT-2/TT-3 affidavit added new information that Defendant Alim Turner had been utilizing rental vehicles, which complicated the installation and removal of any vehicle trackers [*Id.* ¶ 47]. Moreover, the TT-2/TT-3 affidavit added, as to the use of pole cameras, that photos of the

pole camera that had previously been used at one of the residences believed to be utilized by the drug-trafficking organization had been shared on social media by a sister of one of the suspects [*Id.* ¶ 49].

Ultimately, both the TT-2 and TT-2/TT-3 affidavits exhaustively considered alternative investigative techniques to wiretaps, and included specific information as to why many of those alternatives would be unlikely to provide any results in this case. Contrary to Defendant Stewart's assertions, these affidavits contained far more than "boilerplate" explanations for why alternative investigative techniques were rejected. The Court finds that the TT-2 and TT-2/TT-3 affidavits reflect that law enforcement gave serious consideration to non-wiretap investigative techniques prior to applying for the wiretaps, and the issuing judge was informed of the reasons for the investigators' beliefs that such alternative investigative techniques would be inadequate in this case. *See Alfano*, 838 F.2d at 163–64. Accordingly, Defendant Stewart's objection [Doc. 359, pp. 5–6] to the R&R's conclusion that the TT-2 and TT-2/TT-3 affidavits met the necessity requirement is **OVERRULED**.

### 3. Sealing

Finally, Defendant Stewart objects to Judge Poplin's conclusion that the renewal of the TT-2 wiretap was sealed immediately, calculation of the delay relating to the initial TT-2 and TT-3 wiretaps, and finding that the government provided a satisfactory explanation for the sealing delay [Doc. 359, pp. 6–9]. As to Judge Poplin's calculation of

any delay in sealing the TT-2 and TT-2/TT-3 wiretaps, Defendant Stewart contends that Judge Poplin erred in excluding weekend days from the delay analysis [*Id*. at 9].

As to the government's explanation for any delay, Defendant Stewart states that the government provides no explanation for the delays, or information about where the data was, through what means it was shipped, when it was downloaded to the discs, how it was protected from tampering, or any other information that would suffice to justify such delays [*Id*. at 7–8].

The government responds that Judge Poplin correctly found that the government provided a satisfactory explanation for the brief delay in sealing and reasonably relied on Sixth Circuit precedent in excluding weekends from the delay calculus [Doc. 371, p. 7].

Section 2518(8)(a) provides that:

> Immediately upon the expiration of the period of the order [authorizing the interception of wire or oral communications], or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his [or her] directions. . . .  The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a).  "Immediately" is understood as meaning "within one or two days."  *United States v. Wilkinson*, 53 F.3d 757, 759 (6th Cir. 1995).  Where a recording of an intercepted conversation is not sealed "immediately" upon expiration of the authorizing order, the "satisfactory explanation" language of § 2518(8)(a) requires that the government explain both the delay and why it is excusable, i.e., "satisfactory."  *Id*. Relatively short "administrative delays" necessitated by the process required to comply

19

with Title III are "justifiable government delays under the statutory scheme." *United States v. Carson*, 969 F.2d 1480, 1488 (3d Cir. 1992).

In his objection to Judge Poplin's conclusion that the government established a satisfactory explanation for any delay in sealing the TT-2 and TT-3 wiretap records, Defendant Stewart primarily contends that the government's explanation failed to provide various details about the status and protections surrounding the wiretap recordings during the mailing process. However, Defendant Stewart cites no case law, or other legal support that would require the government to provide such specifics to establish a "satisfactory explanation." Even excluding weekends from the calculus, the longest total delay in sealing any of the TT-2 and TT-3 wiretap recordings was less than one week [*See* Doc. 354, pp. 44–45 (discussing the relevant dates)]. The government explained that these delays were due to the administrative process of downloading the recordings, which are stored on servers outside the Eastern District of Tennessee, onto discs, and then having them shipped to Knoxville via a commercial carrier for sealing [Doc. 231, p. 26]. The Court agrees with Judge Poplin's conclusion that such a brief delay, based on the administrative process necessary to obtain physical copies of the wiretap recordings, is a "satisfactory explanation" for a delay of less than one week in sealing the wiretap recordings at issue. Moreover, because the Court finds that, even if the Court were to include weekends in the delay calculus, the government has provided a "satisfactory explanation" for the relevant delays, the Court finds it unnecessary to address Defendant Stewart's argument regarding whether weekend days should be counted in calculating a

20

sealing delay.  Accordingly, Defendant Stewart's objections [Doc. 359, pp. 6–9] to Judge Poplin's conclusion that the TT-2 and TT-2/TT-3 wiretap recordings are not inadmissible due to sealing delays are **OVERRULED**.

## IV.     Conclusion

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct.  Accordingly, the Court **ACCEPTS IN PART**[6] the R&R [Doc. 354].  Defendant Antoinette Turner and Defendant Billips's motions to adopt [Docs. 363, 366] are **DENIED AS MOOT**, but the remaining defendants' motions to adopt [Docs.  361, 364, 368] are **GRANTED**.  Defendants' objections [Docs. 358, 359, 360] are **OVERRULED**.  Defendant Ronald Turner's and Defendant Gilmore's motions to adopt [Docs. 192, 209] are **GRANTED**, in that the Court has considered the relevant motions as adopted by these defendants.  However, the motions to suppress the wiretap recordings [Docs. 186, 188, 189, 190, 212] are **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[6]  As noted previously, the Court accepts all portions of the R&R, with the exception of the R&R's conclusion that weekend days should not be counted in calculating the delay in sealing the wiretap records [Doc. 354, pp. 46–47].

21